UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PENN ENGINEERING & MANUFACTURING CORP. and PEM MANAGEMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SHANGHAI JINGYANG IMPORT & EXPORT CO., LTD.; CLINCHING FASTENERS CO., LTD.; DONGTAI HUAWEI STANDARD COMPONENT CORP.; FINEXPRESS FASTENER CO., LTD.; RICHARD MANNO & CO., INC.; and SHENZHEN HONGYIJIN METAL CO., LTD.,<br><br>Defendants. | 2:07-CV-01505-PMP-GWF<br><br>ORDER |

Presently before the Court is Defendant Dongtai Huawei Standard Component Corporation's Motion to Dismiss for Insufficiency of Service of Process (Doc. #24), filed on December 17, 2007. Plaintiffs filed an Opposition (Doc. #39) on January 4, 2008. Defendant filed a Reply (Doc. #51) on January 18, 2008.

Also before the Court is Defendant Shanghai Jingyang's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #40), filed on January 7, 2008. Plaintiffs filed an Opposition (Doc. #56) on February 1, 2008. Defendant filed a Reply (Doc. #61) on February 15, 2008.

///

///

Also before the Court is Defendant ShenZhen Hongyijin's Motion to Dismiss for Insufficient Service and for Lack of Personal Jurisdiction (Doc. #41), filed on January 7, 2008. Defendants filed an Opposition (Doc. #57) on February 1, 2008. Defendant filed a Reply (Doc. #60) on February 15, 2008.

**I. BACKGROUND**

Plaintiff Penn Engineering and Manufacturing Corp. ("PEM") is a Delaware corporation headquartered in Pennsylvania which designs and manufactures self-clinching fasteners. (Compl. at 2.) Plaintiff PEM Management, Inc. is a Delaware corporation and is PEM's wholly owned subsidiary. (Id.) Plaintiff PEM owns several patents and trademarks for the design and operation of self-clinching fasteners, including design patents for the ornamental design for fasteners. (Id. at 4-5 & Exs. E-I.) Defendants Shanghai Jingyang Import & Export Co., Ltd. ("Jingyang"), Dongtai Huawei Standard Component Corporation ("Dongtai"), and ShenZhen Hongyijin ("ShenZhen") are Chinese corporations involved in the business of selling various fasteners. (Id. at 3.) Plaintiffs allege Defendants violated Plaintiffs' intellectual property rights by advertising, displaying, and offering for sale materials that infringe Plaintiffs' patents and trademarks through websites and at the National Industrial Fastener Show/West held on November 12-14, 2007 in Las Vegas, Nevada. (Id. at 2, 7-39.)

Plaintiffs brought this suit on November 13, 2007, asserting claims for patent infringement (counts one, two, and three), trademark infringement (counts four and seven), violation of the Lanham Act (counts five and eight), and counterfeiting (counts six and nine). Plaintiffs served Defendants Dongtai, ShenZhen, and Jingyang at their booths at the trade show. These Defendants now move to dismiss the Complaint. Defendant Dongtai moves to dismiss for insufficiency of service of process. Defendant Jingyang moves to dismiss for lack of personal jurisdiction. Defendant ShenZhen moves to dismiss for insufficiency of service of process and for lack of personal jurisdiction. Plaintiffs oppose

these motions.

**II. DEFENDANT DONGTAI'S MOTION TO DISMISS**

Defendant Dongtai moves to dismiss for insufficient service of process. Dongtai contends Plaintiffs served the summons and Complaint on an individual who was manning Dongtai's booth at the trade show, but who in fact is not a Dongtai employee and is not authorized to receive service of process for Dongtai. Plaintiffs respond that the individual at the trade show had actual or apparent authority to receive service of process for Dongtai, and therefore service on him was proper.

According to the Affidavit of Service, Plaintiffs' process server served the Complaint and summons on "Liu Fu Lin" of Dongtai. (Special Appearance & Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5) for Insufficiency of Service of Process [Doc. #24, "Dongtai's Mot."], Ex. 1.) Fu Lin Liu ("Liu") is Dongtai's Chairman and General Manager. (Dongtai's Mot., Ex. 2 at 1.) However, the process server did not serve Liu, he served Liu's son-in-law, Ye Jiang ("Jiang"). (Id. at 1-2; Dongtai's Mot., Ex. 3 at 1-2.) According to Liu and Jiang, Jiang is not an officer, director, president, vice president, executive, cashier, secretary, managing or business agent, or registered agent for Dongtai, and Dongtai never has authorized him to receive service on Dongtai's behalf. (Dongtai's Mot., Ex. 2 at 1-2, Ex. 3 at 1-2.) Jiang attended the trade show in Nevada on Dongtai's behalf but was not compensated for his time. (Dongtai's Mot., Ex. 2 at 2, Ex. 3 at 1-2.) According to Jiang, the process server handed Jiang the documents without identifying himself and without asking Jiang his identity, and then walked away. (Dongtai's Mot., Ex. 3 at 2.) Liu was not at the Dongtai booth when Jiang was served, but Jiang provided Liu the documents the next day. (Dongtai's Mot., Ex. 2 at 2, Ex. 3 at 2.)

Plaintiffs' witnesses give a slightly different version of events. Joseph McKenna ("McKenna"), PEM's Special Products Manager, attended the trade show. (Pls.' Opp'n [Doc. #39], Ex. A at 2.) McKenna observed Jiang setting up and manning the Dongtai

booth. (Id.) While Jiang was away from the booth, McKenna obtained two business cards and a product sample from the Dongtai booth. (Id.) One business card was for "Liu Fu Lin," and the other was for "David Jiang," whom the card identified as "General Manager (Germany Office)" for Dongtai. (Id., Attach. 1 & 2.) The business card lists a Dongtai email address for Jiang. (Id.) McKenna states that on November 13, he observed Jiang at the Dongtai booth and "to the best of my recollection, Mr. Jiang was wearing a badge issued by the trade show organizers that identified him as 'Fu Lin Liu.'" (Id.) McKenna states he and the process server remained at the trade show for some time following service and Jiang made no effort to communicate to them that he was not Liu. (Id. at 3.)

Plaintiffs' process server, Scott Austin ("Austin"), states that McKenna pointed out Jiang to Austin and advised him that Jiang was Liu. (Pls.' Opp'n, Ex. 3 at 1.) Austin avers he approached Jiang and asked "Liu?" (Id. at 2.) According to Austin, the man he approached looked up in response, and Austin told him he was a process server and had a summons and complaint for him. (Id.) Austin states Jiang took the documents and reviewed them as Austin stood by. (Id.) Jiang did not say he was not Liu and did not advise Austin he was not authorized to accept service. (Id.) Austin left the booth, and he and McKenna walked around the convention for several minutes before walking back by Dongtai's booth. (Id.) Jiang did not approach Austin to advise him he was not Liu or that he could not accept service for Dongtai. (Id.)

In response, Jiang denies he ever wore a name badge identifying himself as Liu or that he represented himself to anyone as Liu. (Defs.' Reply [Doc. #51], Ex. A at 1.) Jiang also states that although his business card states he is manager of Dongtai's Germany office, the title is honorary, and to his knowledge, Dongtai never has operated a Germany office. (Id.) Jiang states he did not hear Austin call out Liu's name or identify himself as a process server, he just noticed Austin handing him the papers. (Id. at 2.) Jiang states Austin did not ask him any questions, explain the content of the papers, or return to visit the

booth at a later time. (Id.) Defendant Dongtai also provides the summonses to other Defendants in this case demonstrating Austin served six Defendants within ten minutes, including serving another Defendant two minutes after serving Jiang. (Defs.' Reply, Ex. B.)

This Court does not have jurisdiction over a defendant unless the plaintiff properly has served the defendant under Federal Rule of Civil Procedure 4. Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc., 840 F.2d 685, 688 (9th Cir. 1988). Rule 4 is "a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Id. (quotation omitted). However, even if the defendant receives actual notice, the Court will lack jurisdiction over the defendant unless the plaintiff substantially complies with Rule 4. Id. "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc., 635 F.2d 434, 435 (5th Cir. 1981). If the plaintiff fails to establish service was proper, whether to dismiss the action or to quash service lies within the Court's discretion. S.J. v. Issaquah School Dist. No. 411, 470 F.3d 1288, 1293 (9th Cir. 2006).

Pursuant to Rule 4, a domestic or foreign corporation may be served in the manner prescribed by Rule 4(e)(1) for serving an individual,[1] or by delivering process to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1). Although the rule identifies certain designated officers and agents, service of process is not limited to these individuals. Direct Mail Specialists, Inc., 840 F.2d at 688. Service will be effective if made

---

[1] Under Rule 4(e)(1), service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Plaintiffs do not contend service was effected under this provision.

on "a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." Id. (quotation omitted). Whether the served individual fits within this category involves a factual inquiry into the person's authority within the corporation. Id. A person with apparent authority, even if they are not a corporate employee, may be a corporation's agent for service of process in certain circumstances. Id. at 688 n.1 (citing 2 J. Moore, J. Lucas, H. Fink & C. Thompson, Moore's Federal Practice ¶ 4.22(2) at 4-201-04-202 n.11(2d ed. 1987)). The Court also may consider whether the correct person received actual notice in determining whether service was valid. Id. at 688.

A review of analogous cases is illustrative of the inquiry's factual nature. In Direct Mail Specialists, Inc., a process server went to the building that served as the office for two companies. Id. at 687. The process server asked the receptionist who was authorized to accept process for one of the companies. Id. The secretary stated no one was present who was authorized to receive service. Id. The process server told the secretary he needed to talk with the person in charge of the office. Id. The secretary replied that she was the only person there. Id. The server left the complaint and summons with her and instructed her to give them to her superiors. Id. The next day, the company's president complained during a telephone conversation about having been served the day before. Id.

Under these circumstances, the United States Court of Appeals for the Ninth Circuit found service of process on the secretary substantially complied with Rule 4 even though the secretary did not fit within the specific roles identified in Rule 4, and even though she apparently was not even an employee of the company being served. Id. at 688-89. The Court considered the relatively small size of the company and the commensurately large role the receptionist played within that structure, given that she was the only employee in the office when the process server arrived. Id. at 688-69. Additionally, the Court noted

the president's complaint about the service of process the next day demonstrated the company received actual notice. Id. at 689. Finally, the Court noted that because the president was a lawyer, he should have been aware of the perils of ignoring process. Id.

In contrast, this Court found the plaintiff failed to establish proper service of process where it served an individual at a trade show. R. Griggs Group Ltd. v. Filanto Spa, 920 F. Supp. 1100, 1102 (D. Nev. 1996). In that case, the relationship between the served individual and the defendant was unclear, although an unrebutted affidavit indicated he was not an officer, director, employee, managing agent, or general agent of defendant nor an agent authorized to receive service of process on the defendant's behalf. Id. The Court stated the plaintiff–

> made no showing that [the served individual] was sufficiently integrated with the organization to render service upon him fair, reasonable and just. While the process server may have thought he was serving a legal representative of [the defendant], no facts have been presented to the court to support this assumption and that assessment has no bearing on the court's determination. Plaintiff freely admits that it has yet to conduct discovery and does not know the extent or nature of [the served individual's] involvement with [the defendant], yet asks the court to share its view that "considering the circumstances surrounding the service, it is apparent that [the served individual] represented [the defendant] during the WSA show" and that "clearly some formal relationship existed" between them. This the court declines to do.

Id. at 1102 (internal citations omitted).

Likewise, the United States District Court for the Northern District of California found a plaintiff failed to establish effective service of process where there was no evidence the served individual was an officer, managing agent, or agent appointed by law for accepting service of process. Audio Toys, Inc. v. Smart AV Pty Ltd., No. C 06-6298 SBA, Slip Copy, 2007 WL 1655793, at *4 (N.D. Cal. June 7, 2007). The parties presented little evidence of the served individual's role within the organization beyond the fact that he was seen at a trade show providing information to customers and demonstrating the capabilities of the organization's products, and he provided a business card indicating he was an

employee. Id.

Here, Jiang is not an officer, managing agent, or agent appointed by law for accepting receipt of service of process for Defendant Dongtai. Defendants' unrebutted affidavits aver Jiang was not employed by Dongtai, received no compensation for his time at the trade show, and held only an honorary title to a non-existent office. Jiang's appearance and activities as Dongtai's representative at a trade show do not support a finding Dongtai authorized him to receive service of process. Moreover, the Court finds inconclusive at best Plaintiffs' contention that Jiang wore Liu's name tag and therefore misled Plaintiffs into serving the wrong individual. McKenna states only that he believed he saw Jiang wearing Liu's name tag. Jiang denies he did so. The process server does not indicate he observed Jiang wearing Liu's name tag. Although McKenna picked up two business cards from the Dongtai booth, he apparently assumed Jiang was Liu without verifying this information. McKenna then advised Austin that Jiang was Liu. Additionally, although Austin states he addressed Jiang as Liu and Jiang responded by looking up, Jiang denies he heard Austin and responded when he saw Austin handing him documents. Austin took no further steps to verify Jiang's identity or to ensure Jiang was a person who properly could accept service on Dongtai's behalf.

Under these circumstances, the Court concludes Plaintiffs have not substantially complied with Rule 4 and the Court will grant Defendants' motion to quash service. However, the Court will not dismiss the Complaint. Rather, the Court, in its discretion, will permit Plaintiffs the opportunity to serve Dongtai properly under Rule 4(f) and (h)(2).

**III. DEFENDANT JINGYANG'S MOTION TO DISMISS**

Defendant Jingyang moves to dismiss, arguing this Court lacks personal jurisdiction over Jingyang because it conducts no business in the state, and its only connection to the state is its attendance at an industry trade show. Plaintiffs respond Jingyang's appearance at the trade show at which it displayed and advertised infringing

products suffices to give this Court personal jurisdiction over Jingyang. Alternatively, Plaintiffs argue Jingyang has sufficient contacts with the entire United States to subject it to personal jurisdiction. Plaintiffs also argue they acquired "tag" jurisdiction over Jingyang by serving Jingyang's General Manager while he was in Las Vegas for the trade show. Finally, Plaintiffs request jurisdictional discovery in the event the Court is inclined to grant Jingyang's motion.

Defendant Jingyang is a Chinese company engaged in the sale and export of fasteners, with its principal place of business in Shanghai, China. (Def. Shanghai Jingyang's Mot. to Dismiss for Lack of Personal Juris. [Doc. #40, "Mot."], Decl. of Faith Fu at 2.) Defendant Jingyang does not have a place of business in the United States. (Id.) Defendant Jingyang does not transact business in Nevada, does not have a designated agent for service of process in Nevada, has no representatives or employees in Nevada, and never has been authorized to do business in Nevada. (Id.) Additionally, Defendant Jingyang has no Nevada customers, has made no sales in Nevada, and has never shipped products to Nevada. (Id.)

Defendant Jingyang operates a website, shjingyang.com. (Id.) Defendant Jingyang does not accept internet orders through its website. (Id.) However, the website states Jingyang "Welcome[s] your orders, visit and technique consultation." (Pls.' Opp'n to Def. Shanghai Jingyang Import & Export Co., Ltd.'s Mot. to Dismiss for Lack of Personal Juris. [Doc. #56, "Opp'n"], McKenna Decl., Ex. 4 at 1.) The website contains a feedback screen which permits a visitor to the website to enter information and contact Jingyang. (Id. at 2.) According to Plaintiffs, the website displays products which infringe its patents and trademarks. (Id. 4-14.) The product listings contain no prices and the website contains no means for exchanging credit information unless such information was included in the text box on the feedback form. (Def. Shanghai Jingyang's Reply in Support of Mot. to Dismiss for Lack of Personal Juris. [Doc. #61, "Reply," Supplemental Fu Decl. at 3.)

Jingyang's sister corporation, Shanghai Jingyang Fastener Co., Ltd. ("Jingyang Fastener") operates a Chinese-language website at jingyangnet.com. (Mot., Fu Decl. at 2.) Defendant Jingyang does not control or operate Jingyang Fastener's website. (Id.) Defendant Jingyang is a separate entity from Jingyang Fastener. (Reply [Doc. #61], Supplemental Fu Decl. at 2.) Neither company controls the other and Jingyang Fastener is not Jingyang's parent or subsidiary. (Id.) The two entities do not share the same management or personnel. (Id.) Both companies sell Jingyang Factory brand fasteners. (Id. at 2.)

Defendant Jingyang's General Manger, Nick Chen, attended the trade show in Nevada in November 2007. (Mot., Fu Decl. at 3.) Chen displayed catalogs, demo sample boards, and loose samples at the trade show. (Id.) The demo sample boards showed four allegedly infringing products and the sample products contained eight allegedly infringing products. (Id.) Jingyang made no sales, contracts, or offers to sell at the trade show. (Id.) Its promotional materials contained no prices for the displayed products. (Id., Ex. 1.)

Plaintiff PEM's Products Manager, McKenna, visited the Jingyang booth at the trade show where he obtained products samples and a brochure. (Opp'n, McKenna Decl. at 2.) The brochure McKenna procured from the Jingyang booth states it is for "Shanghai Jingyang Fastener Co., Ltd." and lists the internet website as www.jingyangnet.com. (Id. at Ex. 1, 2, 9.) The brochure had a sticker on it listing the "North America Distributor" as Beam Engineering, Inc. ("Beam"), which is located in California. (Id.) After the trade show, Beam sent letters to contacts it made at the trade show which included the same brochure distributed at the trade show. (Id. at 3 & Ex. 3.) Defendant Jingyang denies it contacted anyone after the trade show, directly or indirectly. (Reply, Supplemental Fu Decl. at 4.) Defendant took Jingyang Fastener brochures to the trade show, and Beam's employee put the stickers on the brochures. (Id. at 4.)

///

McKenna states PEM previously sent Jingyang a cease-and-desist letter relating to Jingyang's infringement of PEM's patents and trademarks. (Id.) Jingyang purportedly responded by agreeing to stop infringing. (Id.) McKenna states PEM sent a second cease-and-desist letter in March 2006, to which Jingyang did not respond.[2] (Id.) Defendant Jingyang contends these letters were sent to Jingyang Fastener, not Defendant Jingyang. (Reply, Supplemental Fu Decl. at 3.)

Because this is a patent infringement suit, the law of the United States Court of Appeals for the Federal Circuit applies in determining whether this Court has personal jurisdiction over Defendant Jingyang. Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 856 (Fed. Cir. 1999). Additionally, Federal Circuit law applies to the personal jurisdiction issue where the plaintiff also alleges non-patent claims, such as trade mark infringement, if the non-patent claims arise out of the same facts. Id. at 856-57. Because Plaintiffs' non-patent claims arise out of the same facts as the patent infringement claims, all of which arise out of Defendant Jingyang's alleged display of infringing fasteners at the trade show and on its website, the Court will apply Federal Circuit law to the personal jurisdiction question.

To determine whether the Court has jurisdiction over Defendant Jingyang, the Court must determine whether an applicable statute authorizes service of process on the defendant and whether the exercise of jurisdiction would satisfy due process requirements. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1349 (Fed. Cir. 2002). As to the first part of this inquiry, Defendant Jingyang does not dispute Plaintiffs properly effected service by serving its General Manager, Nick Chen, while at the trade show.

///

---

[2] Plaintiffs do not provide copies of the letters.

The Federal Circuit applies a two-part test to determine whether the exercise of jurisdiction comports with due process. Id. at 1350. First, the plaintiff must show the defendant has "minimum contacts" with the forum. Id. The defendant's contacts may support either general or specific personal jurisdiction. The exercise of general personal jurisdiction is proper where the plaintiff shows the defendant has continuous and systematic contacts with the forum, "even if those contacts are not related to the cause of action." Electronics For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003). For specific jurisdiction, the plaintiff must show the defendant purposefully directed his activities at forum residents and "the litigation results from alleged injuries that arise out of or relate to those activities." Deprenyl Animal Health, Inc., 297 F.3d at 1350. The defendant's contacts with the forum must be "such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quotation omitted).

If the plaintiff shows the defendant has the necessary minimum contacts to support either general or specific personal jurisdiction, the defendant bears the burden of "presenting a compelling case that other considerations render the exercise of jurisdiction so unreasonable as to violate fair play and substantial justice." Deprenyl Animal Health, Inc., 297 F.3d at 1351 (quotation omitted). To determine whether the exercise of personal jurisdiction is reasonable, the Court considers such factors as:

> (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

Electronics For Imaging, Inc., 340 F.3d at 1352.

Where the Court decides the personal jurisdiction issue on affidavits and other written materials rather than an evidentiary hearing, a plaintiff need make only a prima facie showing the Court has personal jurisdiction over the defendant. Id. at 1349. The Court

accepts the Complaint's uncontroverted allegations as true and resolves any factual conflicts in the supporting materials in Plaintiffs' favor. Id.

**A. General Jurisdiction**

Defendang Jingyang has no systematic and continuous contacts in Nevada. It has no offices, personnel, or property in the state, and conducts no sales or solicitations here. Its appearance at one trade show does not amount to continuous and systematic contacts with the state. Additionally, its web presence is insufficient to establish general personal jurisdiction. See Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 460 (9th Cir. 2007). Defendant Jingyang's website is generally passive. Although parties may submit feedback, and thus the website has an interactive component, no evidence suggests Defendant Jingyang ever has received or filled an order from Nevada, much less engaged in systematic and continuous sales to the state.

**B. Specific Personal Jurisdiction**

As stated above, for the Court to exercise specific personal jurisdiction, the plaintiff must show the defendant purposefully directed his activities at forum residents and "the litigation results from alleged injuries that arise out of or relate to those activities." Deprenyl Animal Health, Inc., 297 F.3d at 1350. Even a single act may support specific jurisdiction if it creates a substantial connection between the defendant and the forum. Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998). However, purposeful availment does not include "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp., 471 U.S. at 475 (quotations and internal citation omitted). If the plaintiff shows the defendant has minimum contacts with the forum, the defendant bears the burden of demonstrating the exercise of jurisdiction would be unreasonable. Deprenyl Animal Health, 297 F.3d at 1350.

///

1. Purposeful Direction

Defendant Jingyang argues it did not purposefully direct its activity at Nevada by attending a single trade show that was targeting industry professionals rather than Nevada residents. Defendant Jingyang notes it did not make any sales or offers to sell in Nevada, and otherwise lacks any contact with the state. Defendant Jingyang cites case law holding that the mere display of infringing materials that does not include price data or otherwise culminate in a sale does not constitute use, a sale, an offer to sell, or importation, and therefore is not patent infringing activity. Plaintiffs respond that Jingyang purposefully directed its activities at Nevada by displaying, advertising, and promoting infringing products to potential customers at the trade show in Nevada. Plaintiffs argue Defendant purposefully directed its activity at Nevada by committing acts of patent and trademark infringement while physically present in Nevada.

A person infringes a patent if, without authority, he "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). The "tort" of patent infringement occurs where the defendant engages in the allegedly infringing activity. N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1578-79 (Fed. Cir. 1994). Like patent infringement, trademark infringement is akin to a tort. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998). The Lanham Act provides a civil cause of action for the infringement of a trademark:

> (1) Any person who shall, without the consent of the registrant--
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or

> advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114; see also 15 U.S.C. § 1125 (false designation of origin). A party committing the torts of patent or trademark infringement in the forum reasonably may anticipate being haled into court in the forum for injuries related to or arising out of that tort. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984) ("A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory." (quotations omitted)); N. Am. Philips Corp., 35 F.3d at 1580 ("Surely the reasonable market participant in the modern commercial world has to expect to be haled into the courts of that state, however distant, to answer for any liability based at least in part on [unauthorized] importation [of a patented invention].").

Defendant intentionally and voluntarily sent its General Manager to Nevada to represent Defendant Jingyang at the trade show. Defendant provided its employee with demo boards and samples to display at the trade show. Taking Plaintiffs' uncontroverted allegations as true, Defendant displayed on the demo boards and gave out sample fasteners which infringed on Plaintiffs' design patents and trademarks. Defendant engaged in intentional acts directed at the forum, and these are not random, fortuitous, or the acts of third parties. A company which intentionally and voluntarily sends its agent into a forum may anticipate being haled into that forum for torts its agent commits while physically present in the forum.

Defendant Jingyang contends, however, that merely displaying an infringing product or handing out infringing samples at a trade show does not amount to the unauthorized making, using, offering to sell, selling, or importing a patented invention, and consequently it did not commit a tort in the forum. Courts are divided over this issue. Some hold that mere demonstration or display of an accused product does not amount to

using or offering to sell the item.[3] See Knapp-Monarch Co. v. Casco Prods. Corp., 342 F.2d 622, 626 (7th Cir. 1965) (holding display of accused appliance without operating it did not amount to use); Bradshaw v. Igloo Prods. Corp., 912 F. Supp. 1088, 1100-01 (N.D. Ill. 1996)[4] (holding promotion using patented device does not constitute use where actual sale involved non-infringing product), vacated in part on other grounds 101 F.3d 716 (Fed. Cir. 1996) (unpublished); Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1269, 1286 (N.D. Cal. 1991)[5] (holding demonstration of defibrillator at scientific trade show does not constitute infringing act). Intermedics, Inc. held that to show use, the plaintiff had to present evidence the demonstration of an accused product led to or substantially advanced a sale. Intermedics, 775 F. Supp. at 1286.[6]

///

[3] Defendant did not offer to sell the accused devices here because Defendant's displays contained no price information. See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed. Cir. 2005) (holding e-mails that did not contain price terms could not be construed as an "offer").

[4] The Federal Circuit affirmed this part of the district court's opinion, holding the bait and switch method of displaying a patented invention but selling a non-infringing device did not amount to use or sale of the patented invention. Bradshaw v. Igloo Prods. Corp., 101 F.3d 716 (Fed. Cir. 1996) (unpublished).

[5] The Federal Circuit affirmed, assuming that the nonsale demonstrations at the medical conference constituted an infringing use, but holding such use fell within a statutory exemption related to acquiring Food and Drug Administration approval. Intermedics, Inc. v. Ventritex Co., Inc., 991 F.2d 808 (Fed. Cir. 1993) (unpublished).

[6] See also Creo Prods., Inc. v. Presstek, Inc., 166 F. Supp. 2d 944, 976 (D. Del. 2001) (holding plaintiff must produce evidence of importation with intent to sell; bringing a press to a trade show is insufficient to show importation); Cybiotronics, Ltd. v. Golden Source Elec. Ltd., 130 F. Supp. 2d 1152, 1176 (C.D. Cal. 2001) (sending samples into state without intent to sell does not constitute importation); L.A. Gear, Inc. v. E.S. Originals, Inc., 859 F. Supp. 1294, 1298 (C.D. Cal. 1994) ("As a matter of law, merely observing an allegedly infringing device, demonstrating that device, or observing a demonstration of that device does not constitute a 'use' of that device."); Brennan v. Mr. Hanger, Inc., 479 F. Supp. 1215, 1231 (S.D.N.Y. 1979) (mere display of hangar bars does not constitute an infringing use).

Other courts have rejected this interpretation, concluding the statute's plain language of the term "use" includes displaying the product:

> Regardless of whether the display of the product to a potential customer resulted in a sale, the alleged infringer was still attempting to garner sales by displaying the accused product. This Court fails to see how the display of an accused product is only threatening to the rights of the patentee if successful.

Donnely Corp. v. Reitter & Schefenacker GmbH & Co. KG, 189 F. Supp. 2d 696, 704 (W.D. Mich. 2002); see also Dentsply Int'l, Inc. v. Great White, Inc., 132 F. Supp. 2d 310, 318-19 (M.D. Pa. 2000) (finding defendant engaged in an infringing use of the accused product when it provided prototype samples to potential distributors); Thorn EMI N. Am., Inc. v. Micron Tech., Inc., 821 F. Supp. 272, 275 (D. Del. 1993) (holding that sending free samples into the state constituted infringing acts because "each delivery of a free sample . . . impinges on the patentee's right to exclude others from interfering with the patentee's monopoly on the patented product."). The Donnely court noted that its interpretation that displaying an infringing device during a sales meeting constitutes "use" is more consistent with congressional intent to protect patent holders' commercial rights. Donnely Corp., 189 F. Supp. 2d at 704.

None of these cases dealt with a design patent. Pursuant to 35 U.S.C. § 171, a person may patent "any new, original and ornamental design for an article of manufacture." A design patent protects a particular ornamental design while a utility patent protects "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. What constitutes "use" of a design patent therefore may be different than what constitutes "use" of a utility patent.

Courts have interpreted broadly the term "use" to determine what constitutes an infringing use. NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1316-17 (Fed. Cir. 2005). It is a "comprehensive term and embraces within its meaning the right to put into service any given invention." Id. (quoting Bauer & Cie v. O'Donnell, 229 U.S. 1, 10-11

(1913)). The Federal Circuit has not addressed directly whether displaying pictures of a design patent or handing out samples which embody a design patent at a trade show constitute "use" of the design patent. However, the Federal Circuit has discussed what constitutes a "public use" of a design patent under 35 U.S.C. § 102(b), which bars obtaining a patent on an invention if it was in "public use" more than year prior to the patent application. In In re Mann, the Federal Circuit found a design for a table was in "public use" when it was displayed at a trade show more than a year before the patent application was filed because "[t]he only use possible for an ornamental design is its embodiment, exhibition, and observation." 861 F.2d 1581, 1581 (Fed. Cir. 1988); see also In re Harvey, 12 F.3d 1061, 1064 (Fed. Cir. 1993) ("Unlike an invention in a utility patent, a patented ornamental design has no use other than its visual appearance, and its scope is limited to what is shown in the application drawings." (quotation and internal citation omitted)).

Similarly, in evaluating whether an application for a design patent should have been granted, the Federal Circuit has commented on what constitutes a design patent's "normal and intended use." In In re Webb, the applicant sought a design patent for a grooved femoral hip stem prosthesis. 916 F.2d 1553, 1555 (Fed. Cir. 1990). The U.S. Patent and Trademark Office Board of Patent Appeals and Interferences ("Board") denied the claim as unpatentable because the design was not intended to be visible during its normal and intended use, as it would be implanted in a human body. Id. at 1555-56. The applicant argued the design was patentable because the applicant advertised the prosthesis in journals and at trade shows, and purchasers, surgeons, nurses, and other hospital staff observed the ornamental design of the prosthesis before insertion. Id.

The Federal Circuit reversed the Board's denial of the applicant's claim. Id. at 1557-58. The Court noted that generally it may be appropriate to deny a design patent on the grounds that the ornamental design is always concealed during its normal and intended use. Id. at 1557. However, the Court concluded that the normal and intended use of the

prosthesis includes not only its final intended use, but also the "period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article." Id. at 1557-58. The Court noted that "articles are designed for sale and display, and such occasions are normal uses of an article for purposes of § 171. The likelihood that articles would be observed during occasions of display or sale could have a substantial influence on the design or ornamentality of the article." Id. at 1557 (emphasis in original). In other words, a normal and intended use of a design patent is to attract attention to, and interest in, a product:

> Many commercial items, such as colorful and representational vitamin tablets, or caskets, have designs clearly intended to be noticed during the process of sale and equally clearly intended to be completely hidden from view in the final use. Here, for example, there was ample evidence that the features of the device were displayed in advertisements and in displays at trade shows. That evidence was disregarded by the Board because, in its view, doctors should select implants solely for their functional characteristics, not their design. It is not the task of the Board to make such presumptions.

Id. at 1558; see also Seiko Epson Corp. v. Nu-Kote Int'l, Inc., 190 F.3d 1360, 1368 (Fed. Cir. 1999) (noting a design "may contribute distinctiveness or consumer recognition to the design").

Because a design patent covers only ornamental design, its "use" includes embodiment, exhibition, and observation. The Court therefore concludes unauthorized display of the ornamental design on demo boards and on samples handed out at a trade show constitutes "use" of a design patented invention.

Like the applicant in In re Webb, Plaintiffs aver they obtained the design patents in an effort "to enable its customers and others to identify genuine PEM parts" by using "a variety of distinctive configurations in the design of its products and . . . a variety of distinctive markings . . . ." (Compl. at 5.) Plaintiffs further allege–

> PEM advertises its design patents and trademarks widely and encourages its customers to look for these distinctive markings. As a result, customers at various levels in the industry associate the designs

> protected by PEM's trademarks and design patents with PEM. Thus, the [original equipment manufacturers] that insist on genuine PEM brand parts know how to look for certain distinctive fastener markings or designs in order to verify that their supplier has, in fact, used genuine PEM parts.

(Id. at 5-6.)

Moreover, Plaintiffs have trademarked certain designs. None of the cases upon which Jingyang relies involve trademark infringement. Defendant Jingyang cites no authority suggesting the display of trademarked designs and handing out counterfeit samples marked with the registered mark at a trade show are insufficient to support specific personal jurisdiction for trademark infringement. Thus, Defendant Jingyang allegedly has committed a tort in the state of Nevada and consequently purposefully has availed itself of the forum.

2. Claims Arise out of the Contacts

Plaintiffs' claims arise out of Defendant Jingyang's contacts with Nevada. The Complaint asserts Defendant Jingyang infringed the patents and trademarks by attending the trade show where it advertised and displayed the accused materials. (Compl. at 6-9, 11-12, 14, 16, 20, 23, 29, 32-33, 35.)

3. Reasonableness

Defendant Jingyang has failed to present a compelling case that other considerations render the exercise of jurisdiction unreasonable. The burden of litigating in Nevada is significant for Defendant, a Chinese corporation with no ties to the state. However, modern methods of communication and travel lessen this burden. Nevada has a significant interest in this litigation. As a site for numerous trade shows, Nevada has an interest in providing a forum for patent and trademark registrants to vindicate their rights and to deter future wrongful conduct in the state. See Keeton, 465 U.S. at 776 (indicating a state has "an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to

deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort." (quotations omitted)). Plaintiffs have an interest in obtaining relief, and likely would be unable to secure jurisdiction over Defendant Jingyang in any other forum with respect to Defendant's alleged infringement at the trade show. Because no other state's interests are implicated and the same body of federal patent and trademark law would govern the claims regardless of the location of the suit, the interests of the interstate judicial system and the shared interest of the several states are not at issue in this case. Given Defendant Jingyang's intentional and voluntary acts of sending its agent into the forum to display and hand out allegedly infringing samples, it is not unreasonable for this Court to exercise personal jurisdiction over Defendant Jingyang for claims related to its in-forum acts. The Court therefore will deny Defendant Jingyang's motion to dismiss.

**IV. DEFENDANT HONGYIJIN'S MOTION TO DISMISS**

Defendant Hongyijin moves to dismiss the Complaint, asserting Plaintiffs failed to serve Defendant. According to Defendant, Plaintiffs served the general manager of Link Hardware Company, Inc., and this individual is not a Hongyijin employee, officer, general agent, or designated representative for service of process for Defendant. Defendant also argues permitting further attempts at service would be futile because this Court lacks personal jurisdiction over Defendant Hongyijin. Defendant contends it has no contacts with the forum to support exercising personal jurisdiction, and haling Hongyijin into court in Nevada would be unreasonable. Plaintiffs respond the served individual held himself out as a Hongyijin manager with Defendant's permission, and therefore service was proper. Plaintiffs also argue Defendant committed acts of infringement in the forum so the Court may exercise personal jurisdiction over Defendant.

Defendant Hongyijin is a Chinese entity with its principal place of business in China. (Def. Shenzhen Hongyijin's Mot. to Dismiss for Insufficient Service & Lack of

Personal Juris. ["Mot.," Doc. #41], Decl. of Cherry Feng at 2.) Defendant engages in the design, manufacture, and sale of self-clinching fasteners. (Id.) Hongyijin has made sales to two United States companies, but those sales were made in China. (Id.) Hongyijin has no place of business, personnel, or designated agent for service of process in Nevada. (Id.) Hongyijin has no customers in Nevada, has not entered into any contracts in Nevada, and has never shipped any products into Nevada. (Id.)

Defendant did not register for the trade show in Nevada and did not send any of its employees to attend. (Id. at 2-3.) Rather, Defendant authorized Link Hardware Company, Ltd. ("Link"), an independent company, to display Hongyijin's banner and brochures at the trade show. (Id. at 3.) Additionally, Defendant authorized Link's general manager, HH Zhao ("Zhao"), to represent himself as a Hongyijin manager. (Id.) Link is a Chinese corporation that endeavors to distribute Hongyijin products, but has yet to make any sales of Defendant's products. (Mot., Decl. of Henghua Zhao at 2.) Although granting Zhao permission to represent he was a Hongyijin manager, Defendant did not employ Zhao, and did not authorize him to receive service of process on its behalf. (Id., Feng Decl. at 3.)

In a supplemental declaration, Hongyijin's Regional Sales Manager, Cherry Feng ("Feng"), avers Link "did not attend the Trade Show for Hongyijin's benefit or on Hongyijin's behalf." (Def. Shenzhen Hongyijin's Reply in Support of Mot. to Dismiss for Lack of Personal Juris. ["Reply," Doc. #60], Supplemental Feng Decl. at 2.) Rather, Feng states Hongyijin "only gave Mr. Zhao authority to affiliate himself with Hongyijin's factory background in order to benefit his own company, Link Hardware. Hongyijin did not give Mr. Zhao permission or authorization to act in any way on behalf of Hongyijin." (Id.) In his supplemental declaration, Zhao avers "Hongyijin never authorized me to attend the Trade Show on their behalf. I was not authorized to make sales on behalf of Hongyijin or to enter into any contracts on behalf of Hongyijin." (Reply, Supplemental Zhao Decl. at 2.) According to Zhao, because Link would like to be a Hongyijin distributor, Defendant

allowed him to represent he was affiliated with Hongyijin factory at the Trade Show "so that [he] could discuss Link Hardware products with potential customers as a manufacturer, instead of a distributor." (Id.) Zhao avers that he ordered his own business cards and modified copies of Hongyijin brochures, making reproductions for the trade show which included his name. (Id.)

The booth at the trade show was registered under Link's name, but displayed a Hongyijin banner. (Reply, Supplemental Zhao Decl., Ex. 1; Pls.' Opp'n to Def. Shenzhen Hongyijin Metal Co., Ltd.'s Mot. to Dismiss for Lack of Personal Juris. ["Opp'n," Doc. #57], McKenna Decl. at 2.) Nothing at the booth indicated an association with Link or any other organization. (Opp'n, McKenna Decl. at 2.) The Hongyijin brochures displayed at the trade show advertised Hongyijin's website, listed Zhao as the sole email contact with a Hongyijin email address, but contained no price information.[7] (McKenna Decl. at 3 & Ex. 3; Mot., Feng Decl. at 3.) With Hongyijin's permission, Zhao distributed at the trade show business cards identifying him as "Oversea Marketing Manager," and listing a Hongyijin phone and email address, and which lists Hongyijin's website address. (McKenna Decl. at 3 & Ex. 2; Mot., Zhao Decl. at 3.) Zhao made no sales or offers to sell Hongyijin's products at the trade show. (Mot., Zhao Decl. at 2.)

Plaintiffs caused the Complaint and summons to be served on Zhao at the trade show. (Opp'n, McKenna Decl. at 3.) According to Plaintiffs, Zhao reviewed the summons and Complaint after being served but gave no indication he could not accept service of process for Hongyijin. (Id.) According to Zhao, the process server simply handed him the documents and walked away. (Reply, Supplemental Zhao Decl. at 3.) Zhao contends he did not understand immediately the significance of the documents, but when he did, he

---

[7] The parties dispute whether the product samples given out at the trade show were Hongyijin samples or from another manufacturer. The Court need not resolve this issue to decide the personal jurisdiction question.

attempted to find Plaintiffs' booth at the trade show to advise them he could not accept service of process. (Id.) According to Zhao, he could not locate Plaintiffs and no one from Plaintiffs' companies attempted to talk to him. (Id.) Zhao never gave the documents to Defendant Hongyijin. (Id.) However, Defendant Hongyijin has received the documents through other means. (Reply, Supplemental Feng Decl. at 2.)

Hongyijin's website does not list price information for the products, but it does contain a submission form where a visitor to the website may input information. (McKenna Decl. at 4 & Ex. 4.) Above the submission form is text reading "If you have some orders or opinion to Hong Yi Jin, please fill out this form and E-mail to us! Thanks!" (Id., Ex. 4.) The large text box in the form is labeled "Order or Opinion." (Id.) The website also contains a "Member Center" through which a user may monitor order status and search inventory. (Id.) To access the Member Center features, a user must select a user name and password and provide contact information. (Id.) Defendant acknowledges users may fill out the contact form, but contends the website has no means to accept orders, check inventory, review order status. (Reply, Supplemental Feng Decl. at 3.) The website's Member Center registration form and "order" tab are non-functioning, and no one ever has placed an order directly through the website. (Id. at 3-4.)

**A. Service of Process**

Zhao is not an officer, managing agent, or agent appointed by law for accepting receipt of service of process for Defendant Hongyijin. Defendants' unrebutted affidavits aver Zhao was not employed by Hongyijin, and had no agency or distributorship agreement with Hongyijin. Hongyijin's authorization for Zhao to hang a banner and distribute brochures at a trade show, and to represent to persons at the trade show that he was a Hongyijin manager, do not support a finding Hongyijin authorized Zhao to receive service of process for Hongyijin. Although the trade show booth had a Hongyijin banner, the booth was registered to Link. Plaintiffs' process server did not attempt to verify Zhao's identity

or whether he was authorized to receive service of process on Hongyijin's behalf. Under these circumstances, the Court concludes Plaintiffs have not substantially complied with Rule 4 and the Court will grant Defendants' motion to quash service.

**B. Personal Jurisdiction**

Defendant Hongyijin argues the Court should dismiss the Complaint rather than permit Plaintiffs the opportunity to serve Hongyijin properly under Rule 4 because the Court lacks personal jurisdiction over Defendant. Defendant contends it is a Chinese corporation with no contacts with Nevada other than Zhao's appearance at the trade show, and this contact is insufficient to support the exercise of personal jurisdiction. Plaintiffs respond Defendant authorized Zhao to appear at the trade show on its behalf and to hand out brochures containing allegedly infringing fasteners. Plaintiffs argue Defendant therefore committed a tort within the forum and is subject to personal jurisdiction.

1. General Jurisdiction

Defendang Hongyijin has no systematic and continuous contacts in Nevada. It has no offices, personnel, or property in the state, and conducts no sales or solicitations here. Its authorization for one individual to hand out its brochures at one trade show does not amount to continuous and systematic contacts with the state. Additionally, its web presence is insufficient to establish general personal jurisdiction. Defendant Hongyijin's website is generally passive. Although parties may submit feedback, and thus the website has an interactive component, no evidence suggests Defendant Hongyijin ever has received or filled an order from Nevada, much less engaged in systematic and continuous sales to the state.

2. Specific Jurisdiction

a. Purposeful Availment

As discussed above, the display of the allegedly infringing designs at the trade show would constitute "use" of the design patent, and Defendant therefore allegedly

committed a tort in the forum.[8] The issue with respect to Defendant Hongyijin is complicated by the fact that it did not appear at the trade show itself, instead authorizing Zhao to affiliate himself with Hongyijin for purposes of the trade show. Nevertheless, the Court finds Hongyijin purposefully availed itself of Nevada. Hongyijin voluntarily and intentionally authorized Zhao to represent himself as a Hongyijin manager for purposes of the trade show in Nevada and provided him with Hongyijin brochures to hand out at the trade show. Consequently, it was not random, fortuitous, or the unilateral actions of a third party that caused Hongyijin's brochures, which allegedly display infringing designs and marks and which advertise Hongyijin's website,[9] to find their way to Nevada.

b. Claims Arise out of the Contacts

Plaintiffs' claims arise out of Defendant Hongyijin's contacts with Nevada. The Complaint asserts Defendant Hongyijin infringed the patents and trademarks by displaying and handing out the accused materials. (Compl. at 7, 10-11, 14-15, 19, 22-23, 27-28, 31-32, 34, 38-39.)

c. Reasonableness

Defendant Hongyijin has failed to present a compelling case that other considerations render the exercise of jurisdiction unreasonable. The burden of litigating in Nevada is significant for Defendant, a Chinese corporation with no ties to the state. However, modern methods of communication and travel lessen this burden. Nevada has a significant interest in this litigation. As discussed above, Nevada is the site for numerous trade shows, and the state has an interest in providing a forum for patent and trademark

---

[8] Defendant did not offer to sell the accused devices here because Defendant's brochures contained no price information. See MEMC Elec. Materials, Inc., 420 F.3d at 1376.

[9] See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002) (acknowledging a passive website by itself cannot confer personal jurisdiction, but running radio and print advertisements in Nevada constituted "something more" which supported personal jurisdiction).

registrants to vindicate their rights and to deter future wrongful conduct in the state. Plaintiffs have an interest in obtaining relief, and likely would be unable to secure jurisdiction over Defendant Hongyijin in any other forum with respect to Defendant's alleged infringement at the trade show. Because no other state's interests are implicated and the same body of federal patent and trademark law would govern the claims regardless of the location of the suit, the interests of the interstate judicial system and the shared interest of the several states are not at issue in this case. Given Defendant Hongyijin's intentional and voluntary acts of authorizing Zhao to affiliate himself with Hongyijin and providing Zhao with brochures containing the allegedly infringing images to display and hand out at the trade show, it is not unreasonable for this Court to exercise personal jurisdiction over Defendant Hongyijin for claims related to its in-forum acts. The Court therefore will deny Defendant Hongyijin's motion to dismiss the Complaint with prejudice. Rather, the Court, in its discretion, will permit Plaintiffs the opportunity to serve Dongtai properly under Rule 4(f) and (h)(2).

**V. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Dongtai Huawei Standard Component Corporation's Motion to Dismiss for Insufficiency of Service of Process (Doc. #24) is hereby GRANTED in part and DENIED in part. The motion is granted in that the Court quashes service of process on Defendant Dongtai. The motion is denied in that the Court will permit Plaintiffs the opportunity to serve Defendant Dongtai pursuant to Federal Rule of Civil Procedure 4, provided that Plaintiff shall commence service pursuant to Rule 4(f) and (h)(2) within 14 days of the date of this Order.

IT IS FURTHER ORDERED that Defendant Shanghai Jingyang's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #40) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant ShenZhen Hongyijin's Motion to Dismiss for Insufficient Service and for Lack of Personal Jurisdiction (Doc. #41) is hereby

GRANTED in part and DENIED in part. The motion is granted in that the Court quashes service of process on Defendant Hongyijin. The motion is denied in that the Court will permit Plaintiffs the opportunity to serve Defendant Hongyijin pursuant to Federal Rule of Civil Procedure 4, provided that Plaintiff shall commence service pursuant to Rule 4(f) and (h)(2) within 14 days of the date of this Order.

DATED: April 15, 2008.

PHILIP M. PRO
United States District Judge